UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| ALA ALSHERBINI, | ) | | |
| Plaintiff, | ) | | |
| | ) | No. 10 CV 6781 | |
| v. | ) | Judge Blanche M. Manning | |
| | ) | | |
| VILLAGE OF WORTH, et al., | ) | | |
| Defendants. | ) | | |

**MEMORANDUM AND ORDER**

For years plaintiff Ala Alsherbini operated a café that catered to patrons with Middle Eastern roots. He operated the café without incident until defendant Randy Keller took office as mayor of the Village of Worth on January 1, 2009. The café then found itself facing dozens of allegations of municipal violations, a total of 45 during Keller's first six months in office. Although the village backed off efforts to revoke the café's business license, Alsherbini alleges that the village carried out a policy of harassing his patrons to the point that business dropped so dramatically that he was forced out of business.

Alsherbini contends that he was forced out of business due to the defendants' campaign of ridding Worth of Middle Eastern-owned businesses. He has sued the village, Mayor Keller, the village trustees, and the police chief, alleging violations of his civil rights along with various state law claims. The defendants seek to dismiss Alsherbini's complaint in its entirety. For the reasons that follow, the motion to dismiss is granted in part and denied in part.

**BACKGROUND**

The following facts are taken from the complaint, and assumed to be true for purposes of the motion to dismiss. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Alsherbini began operating Friends Café in Worth, Illinois beginning in 2005.

Prior to 2009, the only complaint lodged against his business had been a ticket he received for littering, but his trash collector accepted responsibility and paid the ticket.

In November 2008, long-time village trustee Randy Keller was elected to the position of mayor, a job he took over in January 2009. Six months later, Friends Café received a second ticket for littering. During a subsequent meeting with Police Chief John Carpino, Alsherbini first learned about allegations of noise complaints. A couple of days after that meeting, Alsherbini heard from Mayor Keller, who called to report finding beer cans in a parking lot shared by the café and a liquor store. Mayor Keller insisted that the café rather than the liquor store was to blame, even though the café neither sells alcohol nor allows its consumption on premises.

Then, on August 27, 2009, Alsherbini received notice to appear for proceedings to revoke Friends Café's business license. The complaint detailed more than 45 alleged violations of § 8-3-6(a) of the village code, that had occurred prior to Alsherbini's June 18, 2009, meeting with Police Chief Carpino. The complaint also alleged additional calls after the June 18, 2009, meeting, including nine occasions in which police responded to calls of loud noise or criminal activity at the café.

Before the hearing to revoke Friends Café's business license, Alsherbini and the village entered into a settlement agreement. Under the agreement, Friends Café would close at 10:45 p.m. on weeknights and 11:45 p.m. on weekends, as opposed to 2:00 a.m., in exchange for the village's agreement to end its efforts to revoke the café's license and to not deter patrons by dispatching officers to the café to enforce the closing hour.

Despite the settlement agreement, Alsherbini alleges that police officers arrived at the café to enforce the closing hour, even though it was not yet time to close. In addition, the village

attorney accused Friends Café of allowing underage drinking. Alsherbini contends that the effect of the village's harassment was a dramatic drop in business. For instance, in October and November 2008, the café's receipts were about $6,000, while in October and November of 2009, monthly receipts dropped to just under $3,000. Alsherbini alleges that his business was targeted under a policy of discouraging the operation of Middle-Eastern-owned businesses within the village.

Alsherbini filed a nine-count complaint. It includes the following constitutional claims brought under 42 U.S.C. § 1983: (a) violation of his substantive due process rights under the Fourteenth Amendment (Count I); (b) violation of his rights under the Equal Protection Clause of the Fourteenth Amendment (Count II); (c) a "class of one" claim under the Equal Protection Clause of the Fourteenth Amendment (Count III); (d) a conspiracy claim regarding his substantive due process rights (Count IV); and (e) a conspiracy claim regarding his rights under the Equal Protection Clause (Count V). In addition, Alsherbini has alleged claims of discrimination in the formation or execution of a contract in violation of 42 U.S.C. § 1981 (Count VI), and state law claims of tortious interference with business (Count VII), conspiracy (Count VIII)[1], and *respondeat superior* (Count IX)[2].

The defendants seek to dismiss Alsherbini's complaint in its entirety.

---

[1] The complaint mistakenly numbers this as Count VII.

[2] The complaint mistakenly numbers this as Count VIII.

ANALYSIS

I.       **Standard of Review**

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Seventh Circuit explained that this "[r]ule reflects a liberal notice pleading regime, which is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (internal quotations omitted); *see also McCormick v. City of Chicago*, 230 F.3d 319, 322-24 (7th Cir. 2000) (stating that claims under 42 U.S.C. § 1983 are not subject to a heightened pleading standard, but are only required to set forth sufficient allegations to place the court and the defendants on notice of the gravamen of the complaint).

However, a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). In *Ashcroft v. Iqbal,* the Supreme Court stated that a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

The court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady,* 975 F. 2d 366, 368 (7th Cir. 1992). Nevertheless, "in examining the facts and matching them up with the stated legal claims, we give 'the plaintiff the benefit of imagination,

so long as the hypotheses are consistent with the complaint.'" *Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F. 3d 599, 603 (7th Cir. 2009).

## II. *Monell* Claims Against Village of Worth

First, defendant Village of Worth seeks to dismiss Counts I through IV, the § 1983 claims. In support, the village contends that Alsherbini has failed to allege that it had a policy of discrimination. To establish municipal liability under § 1983, a plaintiff must show that his discrimination was the result of (1) an express policy, (2) a widespread practice, or (3) the conduct of a person with final policymaking authority. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978).

The village argues that Alsherbini has failed to allege a policy or widespread practice and, therefore, has not plausibly suggested liability under *Monell*. However, Alsherbini alleged that the defendants undertook "a practice of targeting Middle Eastern owned businesses through the issuance of tickets, fines, and the revocation of business licenses in order to implement a policy of driving out Middle Eastern owned businesses." Complaint [1-1] ¶ 17. The village contends that the allegations are insufficient because Alsherbini has identified only himself as the target of the practice and, therefore, has failed to allege that the policy was widespread. However, the allegations assert that the practice was aimed at "Middle Eastern owned businesses" and, in any event, identifying a widespread practice is only one of three means of establishing liability under *Monell*. In addition to alleging a widespread practice, Alsherbini has also alleged that the village maintained a policy of driving out Middle Eastern owned businesses, and that the policy was carried out jointly by the village, the mayor, and the trustees, whom he alleges have final policymaking authority.

Accordingly, Alsherbini has sufficiently alleged § 1983 claims against the village and its motion to dismiss for failure to state claims under *Monell* is denied.

III. **Substantive Due Process (Count I)**

Next, the defendants seek to dismiss Alsherbini's substantive due process claim, alleging that he has not alleged a property interest in his business license. To succeed on his substantive due process claim, Alsherbini must prove (1) a cognizable property interest; (2) deprivation of that interest, and (3) a denial of due process. *See LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010).

The defendants contend that Alsherbini cannot establish a property interest in his café's business license because "he is not entitled to operate his business unconditionally and in a manner violating the law." Memorandum [23-1] at 5. However, Alsherbini denies any violations of the law, alleging that the reported violations were merely the ruse through which the defendants carried out their campaign to rid the village of Middle Eastern owned businesses. Accordingly, he has sufficiently alleged a property interest in the cafe's business license.

Next, the defendants contend that Alsherbini cannot establish any deprivation of his interest because the village never revoked the business license. Indeed, the defendants note, the café generated more than $9,000 in revenue during the months that village officers were allegedly harassing patrons. However, Alsherbini alleged that the café's revenues dropped 50% after officers' alleged harassment of patrons began, which left him unable to continue to operate the café. A defendant's "harassment of customers and employees and relentless, baseless prosecutions" that "destroy[s] the value of the plaintiffs' licensed business and forced them ultimately to give up their" license and business is a constitutional deprivation, even if "the

Page 6

license was never actually revoked." *Reed v. Village of Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983). Therefore, Alsherbini has sufficiently alleged a deprivation.

The defendants also contend that Alsherbini cannot establish any denial of due process because the village afforded him a hearing, but he declined it and, instead, entered into a settlement agreement with the village. However, Alsherbini alleges that the harassment that drove away half of the café's business began *after* he entered into the settlement agreement. He has not alleged that he was offered a hearing before the harassment forced him to close his business. Therefore, he has also sufficiently alleged a denial of due process.

Accordingly, the defendants have failed to identify any insufficiency in Alsherbini's substantive due process allegations and, therefore, their motion to dismiss Count I is denied.

## IV. Equal Protection Clause (Count II)

To succeed on his claim under the Equal Protection Clause, Alsherbini would need to prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose. *See Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). The defendants contend that Alsherbini cannot prove discriminatory intent because in his complaint he alleges a race-neutral reason for their conduct: that he committed municipal code violations. *See Billings v. Madison Metropolitan School Dist.*, 259 F.3d 807, 813 (7th Cir. 2001) (race-neutral reasons for defendant's conduct undermined plaintiff's Equal Protection claim). However, as discussed above, Alsherbini alleges that the violations alleged by the defendants were a sham to carry out their policy of ridding the village of Middle Eastern owned businesses. Even if the reports of violations are accurate, Alsherbini could also show that the defendants violated his rights under the Equal Protection Clause through selective enforcement. *See Whren*

Page 7

*v. United States*, 517 U.S. 806, 813 (1996) ("[T]he Constitution prohibits selective enforcement of the law based on considerations such as race.... [T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause.").

Accordingly, Alsherbini has sufficiently alleged a claim under the Equal Protection Clause and the defendants' motion to dismiss Count II is denied.

V.      **Class of One (Count III)**

Next, the defendants seek to dismiss Alsherbini's class of one claim. To succeed on a class of one claim under the Equal Protection Clause, a plaintiff must establish that (1) he has been intentionally treated differently than others similarly situated, and (2) there is no rational basis for the difference in treatment. *See LaBella Winnetka, Inc. v. Village of Winnetka,* 628 F.3d 937, 942 (7th Cir. 2010). The defendants contend that Alsherbini's claim must be dismissed because the allegations of the complaint fail to identify a similarly-situated business "that has been owned and operated for as long as Friends' Café, is located in the same vicinity, has violated the same state and municipal laws, and has received as many (if not more) complaints from citizens." Memorandum [23-1] at 9.

The defendants' argument misapprehends Alsherbini's claim. The complaint does not allege that Alsherbini was disciplined more severely than others who had engaged in similar conduct. Rather, he alleges that even though he operated a law-abiding business, the defendants concocted violations and harassed patrons in an effort to drive him out of business. He has therefore plausibly suggested that he was treated differently than similarly-situated, law-abiding businesses. Therefore, the motion to dismiss Count III is denied.

## VI. Conspiracy Claims (Counts IV and V)

As a threshold issue, Alsherbini alleged his conspiracy claims under § 1983, even though 42 U.S.C. § 1985(3) is the statute that explicitly creates a right of action for conspiracies to deprive persons of rights or privileges. However, the difference is of no consequence because whether captioned as a claim under § 1983 or § 1985(3), the analysis is the same. *See Mnyofu v. Board of Education of Rich Township High School*, Case No. 03 CV 8717, 2007 WL 1308523, at *10 n.17 (N.D. Ill. Apr. 27, 2007). To succeed on a claim of conspiracy to violate civil rights, a plaintiff must prove (1) a conspiracy (agreement) between two or more persons, (2) established to deprive a person or class of persons of the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) deprivation of any right or privilege of the person or class of persons. *See Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 642 (7th Cir. 2006).

The defendants argue that Alsherbini's conspiracy claims must be dismissed for two reasons. First, they contend that "[d]efendants have not deprived Plaintiff of any constitutional right." Reply [28-1] at 7-8. But whether any deprivation occurred is the ultimate factual question that can be resolved only after full development of the record, not on a motion to dismiss. Second, they contend that Alsherbini "merely asserted the existence of a conspiracy without any allegations of a meeting of the minds." *Id.* at 7. However, in his complaint Alsherbini alleges that the "[d]efendants together reached an understanding or agreement . . . to deprive Dr. Alsherbini of his federally protected" rights. Complaint [1-1] ¶¶ 59, 62.

Accordingly, the defendants' arguments for dismissal are unavailing and the motion to dismiss Counts IV and V are denied.

## VII. Discrimination in Formation or Execution of a Contract (Count VI)

In this count, Alsherbini alleges that the defendants discriminated against him on account of his race in violation of 42 U.S.C. § 1981, which prohibits racial discrimination in the formation or execution of a contract (*i.e.*, the café's business license). The defendants argue that Alsherbini's § 1981 claim must be dismissed for two reasons. First, they contend that § 1981 contains no private right of action against a municipality and, therefore, Alsherbini should have brought suit under § 1983, which does contain a private right of action for violations of the United States Constitution or its laws. Courts are split on whether § 1981 provides a private right of action. *See, e.g., Lewis v. Schmidt*, Case No. 10 CV 1819, 2011 WL 43029, at *5 (N.D. Ill. Jan. 4, 2011) (collecting cases). But the court need not weigh in on the split because even if Alsherbini should have identified § 1983 as the statute under which he was proceeding, citing the wrong statute is not fatal to a claim. *See Great West Cas. Co. v. Volvo Trucks North America, Inc.*, Case No. 08 CV 2872, 2010 WL 4222924, at *2 (N.D. Ill. Oct. 20, 2010).

Second, the defendants contend that a business license is not a contract under § 1981. In support, they cite *City of Carbondale v. Wade*, 106 Ill. App. 654 (Ill. App. Ct. 1903), in which the court held that issuance of a liquor license creates "no binding contract between the parties" and "does not create any contract." *Id.* at *4. However, *Wade* did not involve a § 1981 claim but, rather, focused on a municipality's power to revoke a liquor license for cause. The defendants have cited no other authority to support their argument that a business license can never fall within the scope of § 1981's use of the term "contract," and, therefore, have forfeited their argument. *See White Eagle Coop. Ass'n v. Conner*, 553 F.3d 467, 476 n. 6 (7th Cir. 2009)

(undeveloped arguments unsupported by authority are forfeited).  As a consequence, they have established no basis for granting their motion to dismiss Count VI.

The court notes two other issues raised in the defendants' briefs.  First, the defendants have argued that Count VI must be dismissed for the additional reason that "the Village, as a party to such contract [the business license], cannot tortiously interfere with it."  Memorandum [23-1] at 12.  However, Count VI alleges a claim under § 1981, not a state law claim of tortious interference with contract, and the defendants have not explained any relevance of the law of tortious interference with contract to a claim under § 1981.  Therefore, the argument warrants no further discussion.  Second, the defendants assert new arguments for dismissal of Count VI in their reply brief, but arguments raised for the first time in a reply brief deny the opposing party any opportunity to respond and, therefore, are forfeited.  *See Vance v. Bureau of Collection Recovery LLC*, Case No. 10 CV 6324, 2011 WL 881550, at *3 (N.D. Ill. Mar. 11, 2011) (arguments raised for the first time in a reply brief are forfeited).

Accordingly, the motion to dismiss Count VI is denied.

## VIII. Tortious Interference with Business Expectancy (Count VII)

In Count VII, Alsherbini alleges that the defendants purposefully interfered with his expectation of conducting business with the patrons of his café, a tort under Illinois common law.  In response, the defendants assert immunity under Illinois' Local Governmental and Governmental Employees Tort Immunity Act.  *See* 745 Ill. Comp. Stat. 10/1-101 *et seq*.  However, Alsherbini contends that immunity does not extend to an employee's conduct in "instituting or prosecuting any judicial or administrative proceeding" in which he "acts maliciously and without probable cause."  745 Ill. Comp. Stat. 10/2-208.

Accordingly, Alsherbini may proceed with a tortious interference claim that the defendants maliciously and without probable cause instituted or prosecuted revocation proceedings targeting his business license. However, any tortious interference claim based on other alleged conduct by the defendant is dismissed under the Tort Immunity Act.

## IX. State Law Conspiracy (Count VIII)

Next, the defendants seek to dismiss Alsherbini's state law claim of conspiracy. In support, the defendants argue that Alsherbini has failed to allege specific facts in support of the state law conspiracy claim, and that an allegation that the defendants agreed to achieve some illicit purpose is insufficient under *Fritz v. Johnston*, 807 N.E.2d 461, 471 (Ill. 2004). However in *Fritz*, the Illinois Supreme Court analyzed the requirements of fact pleading under Illinois law, not the requirements of notice pleading that govern Alsherbini's allegations. As discussed above in § 6, Alsherbini's complaint sufficiently alleges the elements of a conspiracy, including an agreement among the defendants to tortiously interfere with his business.

Accordingly, the motion to dismiss Count VIII is denied.

## X. State Law *Respondeat Superior* (Count IX)

Finally, the village of Worth seeks to dismiss Alsherbini's claim of *respondeat superior* against it because under the Tort Immunity Act, the individual defendants are immune and, therefore, so is the village. *See* 745 Ill. Comp. Stat. 10/2-109 (a "local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). However, as discussed above in § 7, immunity does not extend to the defendants' alleged involvement in maliciously and without probable cause instituting and prosecuting revocation proceedings targeting the café's business license.

Accordingly, because of the potential liability of the individual defendants, the motion to dismiss the *respondeat superior* claim is denied.

**CONCLUSION**

For the reasons stated, the defendants' motion to dismiss is granted in part and denied in part as follows: the motion to dismiss counts I through VI, VIII, and IX is denied. The motion to dismiss count VII is denied as to any claim of tortious interference with business expectancy premised upon the institution or prosecution of proceedings to revoke the café's business license, and granted as to any other claim of tortious interference with business expectancy. The defendants shall answer no later than April 28, 2011. The parties shall file a revised proposed discovery schedule by that date, and shall report for a status hearing on June 28, 2011, at 11:00 a.m.

ENTER:

DATE: March 31, 2011

_____
Blanche M. Manning
United States District Judge